UNITED STATES of America and Fred
D. Stiles, Special Agent, Internal
Revenue Service, Petitioners,

v.

CECIL E. LUCAS GENERAL CON-
TRACTOR, INC., and Cecil E. Lucas,
as President of Cecil E. Lucas General
Contractor, Inc., Respondents.

No. M–12–32.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 10, 1975.

Daniel A. Piloseno, Trial Atty., U. S. Dept. of Justice, Tax Div., Washington, D. C., for petitioners.

Edward I. Markendorff, Markendorff, Enlow & Grisso, Columbia, S. C., for respondents.

## ORDER

HEMPHILL, District Judge.

On October 9, 1975, pursuant to the provisions of 26 U.S.C. § 7402(b)[1] and 7604(a)[2] petitioners filed in this court a petition to enforce an Internal Revenue

1. 26 U.S.C. § 7402(b) provides: Jurisdiction of district courts

(b) To enforce summons.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, or other data, the district court of the United States for the district in which such person resides or may be found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, or other data.

2. 26 U.S.C. § 7604(a) provides: Enforcement of Summons

(a) Jurisdiction of district court.—If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

Service summons dated the 27th day of June, 1975, directing Cecil E. Lucas, President of defendant corporation (hereinafter called General) to appear at Room 310, Federal Building, 901 Sumter Street, Columbia, South Carolina, on the 9th day of July, 1975, to give testimony relating to the tax liability or the collection of the tax liability of Cecil E. Lucas for the periods 1971–1973.[3] The summons required him to bring with him corporate records of Cecil E. Lucas General Contractor, Inc., including but not limited to nine separate classifications. The respondents refused to comply with the summons by testifying or producing the books, records, and other documents, and such refusal continues to date. On October 13, 1975, this court issued its Order to Show Cause on October 23, 1975, why defendants should not be compelled to testify and produce. On said date the parties, and counsel appeared before the court and the respondents positioned that the desired performance sought by defendants should be denied because:

1. The Internal Revenue Service summons was not issued in good faith and prior to a recommendation of criminal prosecution.

2. The Secretary or his delegate failed to issue a re-examination of letter prior to the issuance of the present summons. (26 U.S.C. § 7605(B)).[4]

3. The summons in question was directed to an improper party.

4. The summons in question required more records than necessary, constituting an unreasonable search and seizure in violation of the Fourth Amendment and representing harassment, an impermissible abuse of process.

5. The summons in question was improper in requiring oral testimony of a corporate officer.

6. A pre-evidentiary hearing discovery should be allowed to aid the respondents in establishing the Government's bad faith and the respondents' claim of a prior inspection by the Internal Revenue Service of the records sought by the summons.

## STATEMENT OF FACTS

The petitioner, Fred D. Stiles, is a Special Agent of the Internal Revenue Service, employed in the Intelligence Division of the Office of the District Director of Internal Revenue in Columbia, South Carolina. He is conducting an investigation for the purpose of ascertaining the correct income tax liabilities of Lucas (hereinafter Lucas) of Columbia, South Carolina for the years 1972 and 1973. The respondents, Cecil E. Lucas General Contractor, Inc. (hereinafter General) and Lucas as President of General are in possession and control of testimony and documents concerning the above-described investigation.

General was incorporated on October 1, 1964, and elected the calendar year period for keeping its records.

During the first half of 1974, Revenue Agent Fred D. Darby conducted an examination of the corporate tax return filed for the calendar year ending December 31, 1971. During this audit, Agent Darby also examined the 1971 Individual Income Tax Return filed for Lucas and inspected the corporate and personal income tax returns, but did not inspect the records of Lucas or General for the taxable years 1972 and 1973. He disallowed a deduction claimed on Lucas' personal return by his report dated July

---

**3.** It appeared from the testimony that after incorporation, the firm of Cecil E. Lucas General Contractor, Inc., kept its books on an annual basis for tax purposes.

**4.** 26 U.S.C. § 7605(b) provides: Time and place of examination

(b) Restrictions on examination of taxpayer. —No taxpayer shall be subjected to unneces-

sary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

8, 1974. Lucas received a statement of adjustment to his return dated December 30, 1974, and paid the balance due by his check no. 2094 dated January 3, 1975. A closing letter, Form L–2, was issued on November 26, 1974, by the Internal Revenue Service indicating that the 1971 Corporation Income Tax Return of General had been accepted as filed.

On May 20, 1975, Special Agent Fred D. Stiles, along with Special Agent Dave Skinner, appeared at the offices of General, and interrogated Lucas, its president, and Samuel C. Boone, Jr., its secretary. On that date Stiles served a summons on Lucas as president of the corporation for seven (7) enumerated classifications of corporate records. The summons was returnable at Stiles' office on June 3, 1975, at 10:00 a. m. and required all corporate records (without further identification as to specific years) for use in the matter of the tax liability of Lucas for the periods 1969 through 1974.

On June 3, 1975, Lucas appeared with counsel at the offices of the Intelligence Division in the Internal Revenue Building, Columbia, South Carolina. Stiles, along with Special Agent Wallace C. Bentley, conducted the hearing during which Lucas, exercising his rights under the Fifth Amendment to the Constitution of the United States, refused to give any testimony, The corporate records were made available either at the corporate offices or at the Internal Revenue Intelligence Division offices for the purposes of inspection or examination but without copying privileges. Stiles refused to receive the records under these circumstances. At this point the hearing was terminated.

On June 27, 1975, Stiles, along with another Special Agent, again appeared at the offices of General. Stiles served on Lucas as president of the corporation another summons for nine (9) enumerated classifications of corporate records. This summons was also returnable at Special Agent Stiles' office. The date for appearances was set for July 9, 1975, at 10:00 a. m. and the records requested this time were identified as covering the

years 1969 through 1974 for use in the matter of the tax liability of Lucas for only the periods covering 1971 through 1973. Lucas at that time informed Stiles that he had a pre-existing commitment to be out of town at the time set for return of the summons and asked Stiles if his counsel could appear for him. Stiles advised Lucas that if counsel had Power of Attorney, they could appear for him and that Lucas could continue with his pre-existing plans.

Powers of Attorney had been executed by Lucas on May 23, 1975, and in accordance with Stiles' instructions, they were delivered to counsel on May 28, 1975.

On July 9, 1975, counsel for Lucas appeared in his absence. Stiles and Special Agent W. W. Altman conducted the hearing at the offices of the Internal Revenue Service in Columbia, South Carolina. They were advised by counsel that following Stiles' advice, Lucas had executed a Power of Attorney and gone on with his out-of-town plans. The Special Agents conducting the hearing were also advised that the summons was similar to the previous one issued and that it was also technically deficient. The hearing was terminated at that time.

On October 9, 1975, Stiles executed the affidavit attached to the Government's petition and the lawsuit was instituted. It is stated in the affidavit that these books, records and other papers were and are now essential to the determination of the correct federal income tax liabilities of Lucas for the taxable years 1972 and 1973.

In an affidavit submitted with petitioner's memorandum of law Fred D. Darby stated:

2. In his capacity as a Revenue Agent, he conducted an investigation for the purpose of ascertaining the correctness of the income tax return of Cecil E. Lucas of Columbia, South Carolina, for the year 1971.

3. As a part of the investigation described in Paragraph 2 of this Affidavit, your affiant inspected copies of the income tax returns of Cecil E. Lu-

cas and Cecil E. Lucas General Contractor, Inc. for the taxable years 1972 and 1973. However, your affiant did not examine the books, records or papers of either Cecil E. Lucas or Cecil E. Lucas General Contractor, Inc. for the years 1972 or 1973. Your affiant inspected books and records pertaining only to the taxable year 1971.

4. As a part of the investigation described in Paragraph 2 of this Affidavit, you affiant closed the investigation with respect to the income tax return of Cecil E. Lucas for the taxable year 1971. Your affiant did not close the investigation of the income tax returns of Cecil E. Lucas for the taxable years 1972 and 1973.

At the hearing of October 23rd counsel for defendants were advised they could present any testimony they desired and Cecil E. Lucas and Samuel C. Boone, Jr. testified. Neither could say positively that a revenue agent had examined the books and records of General for the taxable years 1972 and 1973.

Defendants positioned that they should have all the records of petitioner accumulated or used in connection with the examination of the taxable year 1971 to show that the pursuit dignified by this hearing is a criminal investigation. The court ordered the production, for *in camera* inspection of all of Item III of defendants' motion for production.

A copy of the Internal Revenue Agent's Report relative to the examination of the 1971 Income Tax Return filed by Cecil E. Lucas General Contractor, Inc., which was never furnished to the taxpayer, including but not limited to the Revenue Agent's transmittal letter and related work papers.

and also Item VI of the motion:

An official copy of the Special Agent's Manual, Handbook, or other internal instructions, including but not limited to any and all sections or directives relating to the functions of a Special Agent and the jurisdiction of the Intelligence Division.

The defendants offered to photostat the by-laws of the corporation for the court's inspection, *in camera,* within ten (10) days. All parties were given ten (10) days to submit further data, evidence or memoranda on the issue before the court.

In the general discussion of the motion to produce, the plethora of items originally listed, en masse and separately, were not strenuously argued by counsel for defendants. No supplementary material or memoranda of any kind has been forwarded to the court.

This court has examined the U. S. Individual Income Tax Return (Form 1040) of Lucas for 1971, along with the notes and recommendations of various IRS personnel, which were attached. The examining officer was Darby, and the reviewer was D. Z. Black, Jr. The notes and findings were duly approved by chief of the review staff (who initialed). The information obtained and the action taken was reviewed and approved by a group supervisor. There appears nothing to indicate that fraud was discovered or criminal prosecution recommended for the taxable year 1971.

The U. S. Corporation Tax Return (Form 1120), for the taxable year 1971, of General has been examined by this court *in camera.* It shows that Lucas owned 70% of the stock and was vice president. A note of import in the examination shows "there is no issue to pursue here." Further comment thereabout is unnecessary. By affidavit filed 3 November Darby avers no additional report, other than attached to returns was necessary for the year in question.

The Handbook for Special Agents (Revised 2–7–75) has been examined by the court. Paragraph 267.2 reads:

Purpose of Examination

(1) A summons may be issued for the purpose of examining books and records of taxpayers and third parties and obtaining testimony under oath that may be relevant or material in:

(a) Ascertaining the correctness of any return,

(b) Making a return where none has been made,

(c) Determining a tax liability, or

(d) Collecting such liability.

(2) A summons cannot be issued for any other purpose, such as: A personnel examination; an enrollment case; an investigation of perjury or false statements, if not related to tax matters; a current year tax investigation, if a return has not been filed and is not due. However, if a taxpayer's current year is closed on jeopardy, a summons may be issued if a determination of his tax liability is involved.

(3) A summons may properly be issued in aid of internal revenue investigations which have a civil purpose, notwithstanding the fact that the information might also be used in a criminal prosecution. Since special agents are concerned with determining the correct tax liability, their use of a summons is appropriate under IRC 7602. A summons is not proper after indictment.

(4) The right to examine carries with it a right to make photostatic copies, at least where there is a need for a handwriting analysis.

(5) The purpose of a summons is not limited to obtaining records for what the Government already knows, therefore the Government is permitted to indulge in some "fishing." The inquiry cannot amount to an inquisition or arbitrary inquiry on the part of the tax investigators. A reasonable basis for making the inquiry must exist. What is justifiable "fishing" will be determined from all the facts in each case including the end for which the information is sought. The investigation must not be an unreasonable burden on the third party whose records are sought.

As to summons on third parties, Paragraph 267.51 reads:

(1) A third party witness need not produce a summoned document unless it is in his possession and relevant to the tax liability of the person named, or material to the inquiry. In addition, he may claim his individual right against self-incrimination, and the demand for records must not be unreasonable or oppressive. However, after service of summons, deliberately divesting oneself of possession of documents to avoid production will not excuse the noncompliance. In fact, persons summoned to produce records, who conspire to conceal them and falsely state that they have been stolen, may be prosecuted under 18 USC 1001 for making false statements and 18 USC 1503 for obstructing justice.

(2) In a fraud case, a test as to whether the examination would impose an unreasonable burden is whether the facts show a reasonable ground of suspicion or probable cause for the examination to ascertain if there has been a fraud. The burden upon the third party must be considered in relation to the expected degree of success in finding documents bearing upon the tax liability of the taxpayer being investigated. If the third party must do considerable work at his own expense to supply the requested information, the performance of such a task can be made reasonable and brought within the scope of the statute only if there is some proof of a likelihood that among the many records to be checked will be papers relevant to the tax liability of a particular taxpayer.

\*　　\*　　\*　　\*　　\*　　\*

(7) The Supreme Court held that an individual has no right to intervene in a summons proceeding where the summons was directed to a third person and had to do with records in which the taxpayer has no proprietary interest, which are owned and possessed by the third person and which relate to the third person's business transactions with the taxpayer.

Furthermore, Paragraph 267.1 reads:

(1) A summons may be issued to:

(a) The person liable for tax or required to perform the act:

(b) Any officer or employee of such person;

(c) Any person having possession, custody, or care of books of account containing entries relating to the business of such person; or

(d) Any other person the issuing officer deems proper.

# I

## WAS THE INTERNAL REVENUE SERVICE SUMMONS ISSUED IN GOOD FAITH AND PRIOR TO A RECOMMENDATION OF CRIMINAL PROSECUTION?

Respondents assert that the summons issued to them should not be enforced because the "primary aim" of the investigation being conducted by the Internal Revenue Service is to determine whether the taxpayer, Cecil E. Lucas, has committed a criminal violation of the Internal Revenue Code.

The Supreme Court of the United States in *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), considered the question of whether the Internal Revenue Service can issue a summons to a third party in a criminal investigation of the taxpayer. The Supreme Court stated at page 536, 91 S.Ct. at page 545:

> We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution.

■ The burden is upon the party challenging the enforcement of an internal revenue summons to show an abuse of process. *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964); *United States v. Fisher,* 500 F.2d 683 (3rd Cir. 1974).[5] And these determinations are to be made on the basis of the facts which existed at the time the internal revenue summons was served

upon the respondents. *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

■ The court finds as a fact and concludes as a matter of law that the summons was issued in good faith. The respondents allege bad faith on the part of the petitioners in issuing the summons on the grounds that the investigation is of a criminal nature. However, as demonstrated in *Donaldson, supra,* the fact that an investigation with the potential for a recommendation of criminal prosecution is being conducted is not sufficient to establish bad faith. The respondents must, at the very least establish that the "sole object" for which the summons was issued was to gather evidence for a criminal prosecution of the taxpayer. *United States v. Theodore,* 479 F.2d 749 (4th Cir. 1973); *United States v. Billingsley,* 469 F.2d 1208 (10th Cir. 1972). Further there is *no* showing the IRS has forwarded the case for criminal prosecution.

■ In the present case, there is only a possibility that a recommendation of criminal prosecution will be made against these taxpayers. The investigation has not reached the point where its objective is "solely criminal." *United States v. Billingsley, supra.* After obtaining the subject documents Special Agent Stiles may decide not to propose criminal prosecution of these taxpayers. Even if he does propose such a prosecution his superiors must approve such a proposal and such approval is a mere possibility. Indeed, it is not until the Internal Revenue Service makes a formal recommendation to the United States Department of Justice that "a recommendation of criminal prosecution", is actually made. *United States v. Billingsley, supra.*[6]

---

**5.** "It is now well settled that the possibility that criminal prosecution as well as civil liabilities may arise from a tax investigation is not a sufficient ground for refusing to enforce a summons issued under Section 7602 in good faith and prior to a recommendation for prosecution." [687]

**6.** "We hold, however, the recommendation referred to in *Donaldson* occurs, at the earliest, when the Internal Revenue Service forwards a case to the Department of Justice for criminal prosecution." [469 F.2d 1209]

In the present case, Special Agent Stiles has not proposed criminal prosecution of the taxpayers and Special Agent Stiles' superiors in the Internal Revenue Service *a fortiori* have not forwarded this case to the Department of Justice for criminal prosecution. Therefore, the instant summons was served prior to a recommendation of criminal prosecution.

## II

### THE SECRETARY OR HIS DELEGATE WAS NOT REQUIRED TO ISSUE A RE–EXAMINATION LETTER TO THE TAXPAYER BECAUSE THE SUMMONED BOOKS AND RECORDS ARE THE RECORDS OF A THIRD–PARTY CORPORATION

■ Section 7605(b), *supra*, of the Internal Revenue Code of 1954 (26 U.S.C., Sec. 7605(b)) provides for notification if an additional inspection is necessary.

In the present case, the books, records and papers which are the object of the summons issued by the Special Agent Stiles, are the books, records and papers of taxpayer Cecil E. Lucas General Contractor, Inc. They are not the books, records and papers of taxpayer Lucas. Therefore, Section 7605(b) clearly would not apply to require the Secretary or his delegate to issue a re-examination letter to the taxpayer. As stated by the Sixth Circuit Court of Appeals in *Hinchcliff v. Clarke*, 371 F.2d 697 (6th Cir. 1967), *cert. denied*, 387 U.S. 941, at page 700, 87 S.Ct. 2073, 18 L.Ed.2d 1327:

> Section 7605 of Int.Rev.Code by its express language is applicable only to the "taxpayer" and provides a limitation only upon inspection of "a taxpayer's books of account." The notice of reopening provided for is required "after investigation." The logical construction of this section would be that it served as no bar to IRS investigation of closed years where its investigation pertained to information or records in the possession of third persons.

*Cf., United States v. Dawson*, 400 F.2d 194 (2nd Cir. 1968), *cert. denied*, 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969); *Hall v. Commissioner of Internal Revenue*, 406 F.2d 706 (5th Cir. 1969).

However, even assuming *arguendo* that Section 7605(b) applies to a re-examination of the third-party records in the present case, it is clear that the respondents have failed to establish that the records of General for 1972 and 1973, which are demanded in the summons, have ever been examined by the Internal Revenue Service. It is clear from the testimony of Lucas, President of Cecil E. Lucas General Contractor, Inc. and Boone, Secretary of Cecil E. Lucas General Contractor, Inc., that these individuals did not observe any such examination and they were unable to state that any agent of the Internal Revenue Service had ever inspected these records. Furthermore, as set forth in the Affidavit of Revenue Agent Darby, he did not examine the books, records and papers of Cecil E. Lucas General Contractor, Inc. for 1972 and 1973 which are the subject of the summons at the time Mr. Lucas' 1971 tax return was audited.

A re-examination letter pursuant to Section 7605(b) of the Internal Revenue Code of 1954 was not required prior to the issuance of the summons which is the subject matter of this action.

## III

### PRE–EVIDENTIARY HEARING DISCOVERY IN THIS PROCEEDING SHOULD NOT BE PERMITTED SINCE RESPONDENTS HAVE NOT RAISED IN A SUBSTANTIAL WAY THE EXISTENCE OF SUBSTANTIAL DEFICIENCIES IN THIS SUMMONS PROCEEDING. THE COURT HAS USED *IN CAMERA* INSPECTION TO SATISFY ITS DETERMINATION THAT JUSTICE BE DONE

■ The Circuit Courts of Appeals[7] ruling on the question of whether pre-evidentiary hearing discovery should be permitted in a summons enforcement proceeding, have substantially followed and approved the policy initiated by the First Circuit Court of Appeals in *United States v. Salter*, 432 F.2d 697, at 700–701:

> We believe that there are strong reasons of public policy for placing a burden of proof on respondent before allowing discovery in an enforcement proceeding of this type. A broad discovery order puts the Internal Revenue Service under a severe handicap in conducting a civil investigation. Broad discovery can be expected to cause extensive delays and to jeopardize the integrity and effectiveness of the entire investigation. Coupled with these considerations is the fact that taxpayers have been almost uniformly unsuccessful in proving an "improper purpose" defense. Requiring an evidentiary hearing will not preclude a respondent from raising and proving a "improper purpose," and we of course have no intention of precluding him from doing so. But we feel that the hearing requirement will have the salutary effect of eliminating discovery in cases in which it is clear that respondent will not be able to prove his allegations.
>
> \*     \*     \*     \*     \*     \*
>
> We agree with the government, however, that the *respondent should be required to do more than allege an improper purpose before discovery is ordered in a proceeding of this type.* Some evidence supporting respondent's allegations should be introduced. We approve of the following suggestion, offered by the government:
>
> > "The general solution would probably be for the district court *to pro-*

> *ceed directly to a hearing at which, if desired, the summonee could examine the agent who issued the summons concerning his purpose.* The court could then, by observation and, where necessary, its own questioning of the agent, make its own determination of whether exploration, as by discovery seemed to be in order."

If, at the end of the hearing, there remains a substantial question in the court's mind regarding the validity of the government's purpose, it may then order discovery. (Emphasis added).[8]

The *Salter* court refused to allow the requested discovery and ordered the district court to "proceed directly to a hearing before discovery" in order that the respondents be required to meet their burden of proving abuse of the court's process.

The same position on pre-evidentiary hearing discovery was taken by the Fifth Circuit in *Newman, supra.* The court stated appropriately (at page 169):

> The summoned party must raise *in a substantial way the existence of substantial deficiencies in the summons proceedings.* Only when so raised is there any need for an evidentiary hearing or—in anticipation of it—the traditional pretrial discovery mechanisms. (Emphasis added).

The Fifth Circuit correctly recognized that (at page 169):

> In no way does its use extinguish the adversary proceeding which the decisions call for. Rather it is a principal means by which the enforcing Court can determine whether there is anything to "hear" and if so to give proper scope and direction to an orderly, but expeditious, adjudication of the points in controversy.

---

7. *United States v. Newman*, 441 F.2d 165 (5th Cir. 1971); *United States v. McCarthy*, 514 F.2d 368 (3rd Cir. 1975); *United States v. Church of Scientology*, 520 F.2d 818 (9th Cir. 1975); *United States v. National State Bank*, 454 F.2d 1249 (7th Cir. 1972).

8. There was no request to examine Special Agent Stiles at the hearing of October 23, although he was present and available for questioning.

██ Respondents' conclusory allegation that this summons was issued in connection with a criminal investigation cannot fairly be characterized as raising a substantial deficiency in a substantial way. As stated above, the summons must have been issued in bad faith or after a recommendation of criminal prosecution before this standard is satisfied. *Donaldson v. United States, supra.* Furthermore, the mere allegation of an improper purpose in issuing a summons does not justify discovery. *United States v. Salter, supra.* Indeed, the requirements of raising in a substantial way a substantial defect must be read in light of the *Newman* court's repeated referrals to language of the Supreme Court in *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), requiring a "showing" by one opposing a summons that the summons is an abuse of process. If the *Newman* requirement of raising a substantial defect in a substantial way is to have any meaning, it must require more than a naked allegation of improper purpose. There must be a showing of a factual basis for the conclusion of improper purpose. And the requirement of a factual showing of a substantial defect in a summons is not unreasonable.

It has been recognized that the investigative power of the Commission is "inquisitorial" and analogous to that of a Grand Jury. *United States v. Powell, supra.* It has also been recognized that while taxpayers are almost never successful in showing an improper purpose through the use of discovery, broad discovery in summons enforcement proceedings often causes extensive delays and may jeopardize the entire investigation. *See, e. g., United States v. Salter, supra.* Taxpayers' counsel are openly advised in professional literature to utilize delay as a tactic which can defeat a tax investigation. Symposium, 29 N.Y.U. Institute on Federal Taxation, 987, 998–1000 (1971). This case exemplifies the problem. While the parties are litigating the probable breadth of discovery, the investigation is crippled and the statute of limitations continues to run. On these facts, to allow discovery based on nothing but respondents' naked assertions of an improper purpose for issuance of the summons, would be to provide the much sought after objective of delay and frustration of the current tax investigation.

The Ninth Circuit Court of Appeals in *Church of Scientology, supra,* held that "discovery in a summary summons enforcement proceeding is the exception rather than the rule. The party resisting enforcement should be required to do more than *allege* an improper purpose before discovery is granted [citing to *National State Bank* and *Salter, supra*]. Conclusory allegations carefully tailored to the language of *Powell, supra,* that the Service has issued a summons for an improper purpose such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, are easily made." See *Garrett v. United States,* 9 Cir., 511 F.2d 1037.

The respondents did not come forward with substantiating evidence for their defenses and it is the duty of the district court to dismiss quickly their unsubstantiated contentions so that the investigation can proceed in a swift, efficient, and just manner. To permit discovery herein would "subject examination of books and witnesses in determining the liability of a period for a tax to unjustified and interminable delays, thereby nullifying the clearly expressed purpose of Title 26, U.S.C. § 7602." *United States v. Ruggeiro,* D.C., 300 F.Supp. 968, 973.

IV

## THE SUMMONS WAS NOT DIRECTED TO AN IMPROPER PARTY

██ Lucas is not only president and majority stock owner of the corporation. It is named for him. It is true that Boone is secretary, but Boone owns no stock. In the testimony of Boone and Lucas there was not the slightest suggestion that Lucas was ignorant of the contents of the records sought. The

statute [9] does not limit the target of the summons to any one type of individual, nor circumscribe the authority of the person directed to produce. See *Application of Burr*, 171 F.Supp. 448 (S.D.N.Y. 1959), and *United States v. American Standard Remodeling Corp.*, 252 F.Supp. 690 (W.D.Pa.1966). It has been held that in order for a summons to be deemed valid the records required must be in the possession or under the control of the person summoned. *United States v. Howard*, 360 F.2d 373 (3rd Cir. 1966). In *Howard* the president of the corporation was held to have standing to resist the summons. Here, Lucas resists, and Lucas testifies, but Lucas never says he is not in control. The burden was on Lucas to show he was not in control or possession if he would deny the production on this ground.

## V

## THE SUMMONS DID NOT REQUIRE MORE THAN NECESSARY AND IS NOT HARASSMENT

Congress, in the enactment of 26 U.S.C. 7602 [10] gave notice that the books and records of the taxpayer are subject to scrutiny. The broad scope of the powers of the Commissioner of Internal Revenue is amply portrayed in *Demas-*

*ters v. Arend*, 313 F.2d 79, 88 (9th Cir. 1963), *cert. dism.*, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269. Of the same impact is *United States v. McKay*, 372 F.2d 174 (5th Cir. 1967) when the court held the powers of the Commissioner should be liberally construed. In speaking of the material he can examine and collect the court said:

> We think the power of the Commissioner of Internal Revenue to investigate the records and affairs of taxpayers is greater than that of a party in civil litigation. His power has been characterized by this court as an inquisitorial power, analogous to that of the grand jury and one which should be liberally construed. * * * In such context, the criteria of relevancy and materiality have broader connotations than in the context of trial evidence. * * * As was said in *Bolich v. Rubel*, 2 Cir. 1933, 67 F.2d 894, 895, these inquisitorial powers are justified "because all the facts are in the taxpayer's hands." [176]

The request of the summons was proper.

Whether the summons was improper in requiring oral testimony of a corporate officer was not argued to the court.

The prayer of the petition is granted. Within ten (10) days from the date of

---

9. 26 U.S.C. § 7603 provides: Service of summons

A summons issued under section 6420(e)(2), 6421(f)(2), 6424(d)(2), 6427(e)(2), or 7602 shall be served by the Secretary or his delegate, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons required the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty.

10. 26 U.S.C. § 7602 provides: Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any trans-

feree or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

this order the defendant Lucas will appear before the petitioner, at such time and place as petitioner may designate, and comply with the summons, including the production of records sought.

And it is so ordered.