536 F.2d 820
 James T. LYNN, Secretary of the Department of Housing and
Urban Development, Petitioner-Appellee,
v.
A. E. BIDERMAN et al., Respondents-Appellants,
Priority Investments, Inc., a Washington Corporation, et
al.,Counterclaimants-Appellants.
 No. 75-1617.
 United States Court of Appeals,
Ninth Circuit.
 May 24, 1976.
Rehearing and Rehearing En Banc Denied July 8, 1976.
 
 1
 Arthur Brunwasser (argued), San Francisco, Cal., for respondents-appellants.
 
 
 2
 George C. Stoll, Asst. U. S. Atty. (argued), San Francisco, Cal., for petitioner-appellee.
 
 OPINION
 
 3
 Before BROWNING and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.
 
 BRUCE R. THOMPSON, District Judge:
 
 4
 This is an appeal from an order of the district court (a) enforcing the subpoena duces tecum issued by Petitioner-Appellee ("Appellee") in the course of an investigation under the Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701 et seq.; and (b) dismissing the counterclaim for declaratory and injunctive relief filed by Respondents-Appellants ("Appellants").
 
 
 5
 The Interstate Land Sales Full Disclosure Act ("Act") requires persons[1] engaged in certain interstate sales or leasings of land[2] to register the offering by filing a statement with the Department of Housing and Urban Development ("HUD"). 15 U.S.C.A. §§ 1704, 1705. Those sellers covered by the Act are also required to furnish a property report to prospective purchasers containing information as required by the Secretary of HUD. 15 U.S.C.A. § 1709(a).
 
 
 6
 Under the Act, it is unlawful for any developer to use the mails or other instruments of interstate commerce to sell or lease any lot in any subdivision unless a statement of record is filed with the Secretary of HUD. It is also unlawful for any developer to defraud or deceive a purchaser. 15 U.S.C.A. § 1703(a). If a property report is not given to a purchaser before he signs an agreement to purchase, the agreement is avoidable at the option of the purchaser. 15 U.S.C.A. § 1703(b).
 
 
 7
 A purchaser may sue for money damages. 15 U.S.C.A. § 1709. Additionally, the Secretary may bring an action to enjoin acts or practices which may violate the Act (15 U.S.C.A. § 1714(a)), and he may make investigations as he deems necessary to determine whether any person has violated or is about to violate the Act. 15 U.S.C.A. § 1714(b).
 
 
 8
 The Act contains a limitation of actions section which provides that an action for damages based on an untrue statement or omission in the property report must be brought within one year after the discovery of the statement. The section further provides that an action for rescission based on fraud or the failure of the developer to file a report must be brought within two years. Finally, the section provides that "in no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser." 15 U.S.C.A. § 1711.
 
 
 9
 The Office of Interstate Land Sales Registration (OILSR), a division of HUD, received purchaser complaints concerning the land sales activities of Priority Investments, Inc. (Washington), Peerless Research, Inc., Capital Land Investments, Inc. and Priority Investments, Inc. (California). OILSR then initiated the investigation which is the subject of this action.
 
 
 10
 On January 22, 1973, in the course of the investigation, OILSR issued a subpoena requiring A. E. Biderman to appear to testify and to produce certain documents pertaining to the sales activities of Priority (Washington), Peerless and Capital Land. On July 12, 1973, OILSR issued a subpoena requiring Richard Yagle to appear to testify and to produce certain documents pertaining to the sales activities of Priority (California). Mr. Biderman and Mr. Yagle partially complied with the subpoenas but refused to provide OILSR with the names and addresses of purchasers and copies of the sales contracts and deeds.
 
 
 11
 The affidavit of John McDowell, Deputy Administrator, OILSR, which was attached as an exhibit to the petition for the enforcement of the subpoenas, discloses that the purpose of the investigation is to determine whether appellants violated the registration requirements of the Act or the fraud provisions of the Act. The affidavit further relates:
 
 
 12
 "The information sought in the subpoenas but refused to OILSR is material and essential to this investigation. The names and addresses of purchasers are needed so that they can be contacted about the specifics of the sales operations of the corporations. If the investigation determines that a violation of the Act has taken place, the Secretary has the authority to bring an injunctive action or seek criminal sanctions pursuant to 15 U.S.C. § 1714(a) and 1717."
 
 
 13
 On September 24, 1974, appellee filed in the district court the petition seeking enforcement of the subpoenas. The district court issued an order to show cause why the petition should not be granted. Appellees filed an answer to the petition, four affidavits in response to the order to show cause, and a counterclaim for declaratory and injunctive relief. The district court then issued orders enforcing the administrative subpoenas and dismissing the counterclaim and this appeal ensued.
 
 
 14
 Appellant raises three primary issues respecting this appeal:
 
 
 15
 1. Were the administrative subpoenas duces tecum issued for a legitimate purpose?
 
 
 16
 2. Should the district court have allowed reasonable discovery with respect to the question of the legitimacy of the purpose of the administrative subpoenas duces tecum? In the alternative, should the district court have conducted an evidentiary hearing with respect to that question?3. Did the district court abuse its discretion in dismissing appellant's counterclaim for declaratory and injunctive relief?
 
 
 17
 In United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court established the standard for obtaining judicial enforcement of administrative subpoenas issued by an agency. In that case, the Internal Revenue Service sought the judicial enforcement of a subpoena it had issued in the course of an investigation of a taxpayer. The Court held that the Internal Revenue Service need not meet a "standard of probable cause to investigate" to secure judicial enforcement of its subpoena, but it must show (1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to that purpose; (3) that the information sought is not already within the possession of the agency; and (4) that the administrative steps required by Congressional guidelines have been followed. The standard established in Powell was reaffirmed in Donaldson v. United States, 400 U.S. 517, 526-527, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); see, also, United States v. Church of Scientology, 520 F.2d 818, 821 (9th Cir. 1975). Standards which parallel that established in Powell have been established with respect to subpoenas issued by other administrative agencies. See, e. g., United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946).
 
 
 18
 The two aspects of the Powell standard which are in issue in this case are, first, whether the investigation is being conducted pursuant to a legitimate purpose, and second, whether the inquiry is relevant to that purpose. There has been no suggestion that OILSR already has the information it seeks in the subpoenas or that it failed to correctly follow administrative procedure.
 
 
 19
 Appellant's argument can be summarized as follows:
 
 
 20
 HUD and OILSR wanted the customer lists to notify customers that appellants had failed to register with the agency so that those customers could rescind their contracts and sue for damages. Those purposes are illegitimate, appellants contend, because the limitations periods provided in the Act for the respective remedies had run and, in advising customers of their rights to pursue actions, OILSR was disregarding the limitations periods.
 
 
 21
 Appellants further argue that the only other civil remedy which is even arguably available to appellee, an order by the Secretary to enjoin sales violating the Act, is not available in this instance because appellants have voluntarily ceased selling land. And, since the only civil remedies provided for in the Act are not foreclosed, the investigation is being conducted either to disrupt appellants' businesses or to lead to a criminal prosecution, either of which is impermissible.[3]
 
 
 22
 In arguing that they have a defense to actions for damages or rescission should such actions be filed, appellants misconstrue the nature of the investigation and the nature of the summary proceeding to enforce or deny the administrative subpoenas. The affidavits appellants submitted in opposition to the petitions relate that the last sale of real property by Peerless Research was on or about January 19, 1973 (R. 87), the last sale by Priority Investment (California) was on or about April 13, 1971 (R. 93), and the last sale by Priority Investments (Washington) was on or about June 29, 1971 (R. 99). Taken as true, the information in the affidavits establishes that the limitations period has run and the customers no longer may rescind their contracts or successfully claim damages. See Hall v. Bryce's Mountain Resort, 379 F.Supp. 165 (W.D.Va.1974); Melhorn v. Amrep, 373 F.Supp. 1378 (M.D.Pa.1974). It should be noted, however, that when the investigation began, the information which shows that private civil causes of action may be barred was in the exclusive control of appellants. That information was clearly relevant to the purpose of the initial inquiry which was to determine if any violations of the Act had taken place.
 
 
 23
 It is not an answer, to a suit for injunctive relief brought by the Secretary, to contend that appellants have voluntarily ceased selling land. In order to successfully contend that injunctive litigation is now moot, appellants would have to demonstrate that there is no reasonable expectation that the wrong will be repeated. See United States v. W. T. Grant, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); SEC v. Manor Nursing Ctrs., Inc., 458 F.2d 1082, 1101 (2nd Cir. 1972). Since it is questionable that appellants would have a defense to a suit for injunctive relief, it is clear that appellants should not be able to thwart an investigation which may or may not lead to such a suit. The names of past customers are relevant to an investigation which has an objective of obtaining injunctive relief because it is important to ascertain how appellants secure sales leads and what sales techniques are employed.
 
 
 24
 The purpose of the HUD-OILSR investigation is legitimate for a further reason. The Secretary is authorized, under 15 U.S.C.A. § 1714(b), to secure information to serve as a basis for recommending further legislation. The lists of customers of those companies which may have violated the Act at one time or another are relevant to the legitimate purpose of accumulating information so that the Secretary can recommend future legislation. See, generally, SEC v. Brigadoon Scotch Distributing Co., 480 F.2d 1047 (2nd Cir. 1973), in which the Court reasoned that the burden of showing that agency subpoenas are unreasonable remains with the individuals subpoenaed, and where the agency inquiry is authorized by law and materials sought are relevant to the inquiry, the burden is not easily met.
 
 
 25
 In United States v. Church of Scientology, supra, this Court considered whether discovery or an adversary hearing is required to assist the Court in determining whether or not to enforce an administrative summons. In that case, the Internal Revenue Service ordered a church officer to appear to testify and to produce records relating to the tax liability of the church. The church officer resisted, contending that the Internal Revenue Service investigation was being conducted in bad faith for the sole purpose of harassing the church. The district court enforced the Internal Revenue Service summons without allowing discovery or holding an evidentiary hearing.
 
 
 26
 This Court acknowledged that the Federal Rules of Civil Procedure apply to a proceeding to enforce an administrative summons but concluded that the district court has discretion to limit the application of the Rules to preserve the summary nature of the proceeding. This Court held that the district court did not err in declining to allow the taxpayer to conduct pre-enforcement discovery. 520 F.2d at 824. This Court further held that the district court did err in declining to hold a limited evidentiary hearing to allow the taxpayer to inquire into the purpose of the Internal Revenue Service investigation. 520 F.2d at 525. See, also United States v. McCarthy, 514 F.2d 368 (3rd Cir. 1975); United States v. Salter, 432 F.2d 697 (1st Cir. 1970); United States v. Turner, 480 F.2d 272 (7th Cir. 1973). In each of those cases, the Court held that a limited evidentiary hearing was required to give the individual summoned by the Internal Revenue Service an opportunity to substantiate the allegation that the purpose of the investigation was to harass the taxpayer.
 
 
 27
 The requirement that a court conduct a limited evidentiary hearing before enforcing an administrative summons when the motive of the agency has been attacked has been discussed most extensively in cases concerning the Internal Revenue Service. There appears to be no reason why the requirement is not applicable to investigations conducted by other agencies. Cf. Shasta Minerals & Chemical Co. v. SEC, 328 F.2d 285, 288 (10th Cir. 1964); NLRB v. Costello, 296 F.Supp. 1035, 1037 (D.Conn.1968).
 
 
 28
 The key question with respect to this issue is: Were the allegations of appellants sufficient to raise a doubt regarding the purpose of HUD-OILSR in conducting an investigation to require the court to conduct an evidentiary hearing? In Church of Scientology, supra, the taxpayer argued that the harassment purpose of the Internal Revenue Service was demonstrated in the fact that the Service repeatedly imposed tax assessments on churches of Scientology but then stopped short of litigating the cases on the merits. This Court characterized the taxpayer's allegations as "thin" but, nevertheless, held that an evidentiary hearing was required.
 
 
 29
 There is one difference between the method by which OILSR conducted this investigation and the method generally employed by the Internal Revenue Service. That difference is significant with respect to the question of whether the district court should hold an evidentiary hearing when the individual summoned protests that an investigation is being conducted in bad faith. OILSR initiated its investigation after it was indirectly requested to do so by a number of customers of the appellants. Internal Revenue Service investigations are typically self-initiated. There is arguably less chance of agency oppression when the investigations are conducted at the request of an aggrieved purchaser. The Court noted the problem of agency-initiated investigations in Church of Scientology, supra, 520 F.2d at 823, when it said:
 
 
 30
 "The Church's allegations have more substance than meets the eye. See, e. g., Center on Corporate Responsibility, Inc. v. Schultz, D.D.C., 1973, 368 F.Supp. 863 (evidence of White House use of IRS administrative actions against certain 'activist' organizations whose views were offensive to the White House)."
 
 
 31
 The district court had before it, when it made the determination to enforce the subpoenas duces tecum, the affidavits of John R. McDowell, William J. Ginivan and Richard H. Heidermann in support of enforcement and the affidavits of A. E. Biderman, Arthur Brunwasser, James Stefan and Richard Yagle in opposition to enforcement. There is no indication whatsoever that anything would have been accomplished by an evidentiary hearing and the Court did not abuse its discretion by deciding the case summarily on the affidavits before it.
 
 
 32
 It is apparent from the record that there were one or more legitimate purposes for the administrative subpoena. It is also apparent that it was the firm intention of the Administrator, after the customer lists were obtained, to write to each of the purchasers informing them that they had a right to void their contracts and receive a refund of all monies paid on account of their contracts. This, in our opinion, was not a legitimate purpose. Such advice was quite probably erroneous and was not authorized by the law.
 
 
 33
 It is not, however, a ground to deny enforcement of a subpoena that it is being employed for a wrongful purpose if there is also a legitimate purpose for the subpoena. Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); Weld v. United States, 362 F.2d 206 (9th Cir. 1966).
 
 
 34
 In SEC v. Wall Street Transcript Corp., 422 F.2d 1371 (2nd Cir. 1970), in a case concerning the enforcement of an SEC subpoena duces tecum, the Court considered whether it was appropriate to issue a protective order if the Court determined that the subpoena should be enforced. The Court said:
 
 
 35
 "If the production of materials sought by the Commission's subpoena in this case does threaten any unusual disruption of the Transcript's normal operations, the appellee is, of course, free to ask the district court for appropriate protective limitations." See: Oklahoma Press, supra, Id. at 1381.
 
 
 36
 Here, appellants asked for a protective order in the answer to the petition (R. 64) and argued for the protective order in the memorandum in opposition to the order to show cause (R. 159). It appears that the district judge did not specifically rule on the request for a protective order.
 
 
 37
 In our opinion, appellants were entitled, under the record before us, to a protective order prohibiting the Administrator from writing appellants' customers a positive advice letter of the tenor indicated. On oral argument, Government counsel agreed with this position.
 
 
 38
 The order enforcing subpoena entered by the district court is affirmed, with the addition thereto of a protective order precluding the Administrator of the Office of Interstate Land Sales Registration from advising appellants' customers that they have a right to rescind their contracts and recover back any money paid thereunder.
 
 
 
 *
 Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 The Act applies to "developers" as defined in 15 U.S.C.A. § 1701(4)
 
 
 [2]
 The Act applies to land sold or leased as a "subdivision" as defined in 15 U.S.C.A. § 1701(3) subject to exemptions in 15 U.S.C. § 1702 and 24 C.F.R. § 1710.10(1) (1970-1972)
 
 
 [3]
 An Administrative summons cannot be used for the purpose of conducting a criminal investigation. United States v. Kordel, 397 U.S. 1, 11-12, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). But when no criminal case is actually pending, a summons issued for a civil purpose may be enforced even when it is also used to uncover crime. United States v. Bell, 448 F.2d 40, 41-42 (9th Cir. 1971)