**UNITED STATES of America and Robert Merlo, Revenue Agent, Petitioners-Appellees,**

v.

**SAMUELS, KRAMER AND COMPANY; First Western Government Securities, Inc.; and the individuals, partnerships, joint ventures, associations, or corporations, for whom Samuels, Kramer and Company and First Western Government Securities, Inc., acting as principal, agent and/or broker purchased and/or sold any financial instruments or securities including those of or guaranteed by the United States or United States Government corporations or agencies, et al., Respondents-Appellants.**

No. 82–4537.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 17, 1983.

Decided Aug. 12, 1983.

William A. Whitledge, Dept. of Justice, Washington, D.C., for petitioners-appellees.

Richard J. Sideman, Sideman & Bancroft, San Francisco, Cal., for respondents-appellants.

Before HUG and FARRIS, Circuit Judges, and IRVING *, District Judge.

HUG, Circuit Judge:

Samuels, Kramer and Co. and First Western Government Securities, Inc., challenge an order compelling them to comply with four IRS summonses, two of which are "John Doe" summonses. They primarily contend that the district court, in ordering the enforcement of the summonses, abused its discretion by denying their motions for (1) a de novo review of factual determinations underlying another district judge's authorization of the two John Doe summonses, and (2) a limited evidentiary hearing as to whether the Government was acting in good faith in seeking enforcement of all four summonses. They also argue that the John Doe summonses, if found to have been served in good faith, may be enforced only to discover the names and addresses of unknown taxpayers, and that the IRS may thereafter obtain the records pertaining to these taxpayers only after it has complied with the notice requirements applicable to all other third-party summonses. Because we reverse the order enforcing the four summonses, we need not address this argument. We agree that the appellants may not challenge the ex parte factual determination underlying the authorization of the

---

* The Honorable J. Lawrence Irving, United States District Judge for the Southern District of California, sitting by designation.

two John Doe summonses, but we hold that the district court abused its discretion in denying the appellants' motion for a limited evidentiary hearing.

## I

## BACKGROUND

The appellants are related corporations with offices in San Francisco. Sidney J. Samuels serves as president of the two corporations, both of which have been identified by the IRS as promoters of abusive tax shelters. The two corporations, which allegedly arrange "straddle" transactions through the use of contracts to both purchase and sell mortgage participation certificates, deal exclusively with each other. Neither is a registered securities dealer with any federal or state agency.

After an initial investigation of 25 of the appellants' known customers, the IRS in 1982 began to audit the appellants to determine both their tax liabilities for the years 1978 through 1981 and the correct tax liabilities of the taxpayers who had invested in their programs during those years. Samuels refused to produce the records the IRS needed to conduct the audit of the two corporations. Consequently, the IRS issued summonses to each corporation requiring them to produce the necessary records. At that time, the IRS also determined that it would be necessary to serve a John Doe summons on each corporation in order to obtain information concerning each corporation's unknown investors. Pursuant to 26 U.S.C. § 7609, the IRS filed an ex parte petition for leave to serve the John Doe summonses. Judge Thelton Henderson, having determined that the IRS had met the requirements of section 7609(f), entered an order allowing the John Doe summonses to be served.

The IRS served all four summonses on March 10, 1982. When the appellants refused to comply, the IRS petitioned the district court for enforcement of the summonses. Judge Robert Schnacke issued an order directing the appellants to show cause why the summonses should not be enforced.

The appellants responded in three ways. First, they requested a de novo hearing to review Judge Henderson's authorization of the John Doe summonses. Second, they requested a "limited evidentiary hearing," hoping that prehearing discovery—if allowed as a result of the evidentiary hearing—would enable them to uncover evidence which would bolster their defenses to the enforcement of all four summonses, including their claim that the IRS was acting in bad faith in seeking enforcement. Finally, they claimed that if the court enforced the two John Doe summonses, the IRS was entitled only to learn the identities of the appellants' customers, not to obtain the records pertaining to the customers without first giving them proper notice of the summonses. Judge Schnacke rejected each of these responses and ordered that all four summonses be enforced. Six days later, the appellants filed their timely notice of appeal.

## II

## ANALYSIS

IRS summonses are not self-enforcing, so the Government must seek enforcement from a federal district court if the person on whom a summons has been served refuses to comply. To obtain enforcement of either a direct or a John Doe summons, the Government must establish that its use of the summons is "in good-faith pursuit" of the purposes authorized by Congress. *United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). To establish its good faith, the Government must show "(1) that the investigation will be conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to the purpose; (3) that the information sought is not already within the Service's possession; and (4) that the administrative steps required by the Internal Revenue Code have been followed." *United States v. Church of Scientology,* 520 F.2d 818, 821 (9th Cir. 1975); *see also United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). A prima facie case for

the Government's need for judicial enforcement is established by a "minimal" showing that the good-faith requirement has been met, *United States v. Moon,* 616 F.2d 1043, 1046 (8th Cir.1980), and is typically made—as it was in this case—through the introduction of the sworn declaration of the IRS agent who issued the summons, *see, e.g., United States v. Kis,* 658 F.2d 526, 536 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

Once the Government has established its prima facie case, the district court issues an order requiring the party on whom the summons has been served to show cause, at an enforcement hearing, why compliance with the summons should not be required. *See id.; Church of Scientology,* 520 F.2d at 820. In this case, the appellants responded by filing motions for (a) a de novo review of factual determinations underlying Judge Henderson's authorization of the two John Doe summonses, and (b) a limited evidentiary hearing as to whether the Government was, in fact, acting in good faith in seeking enforcement of all four summonses. Judge Schnacke denied both motions. Applying the abuse of discretion standard, *United States v. Stuckey,* 646 F.2d 1369, 1373 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982), we review each ruling in turn.

## A

A John Doe summons is a direction to a third party—in this case, the appellants—to surrender information concerning taxpayers whose identity is unknown to the IRS. *See In re Tax Liabilities of John Does,* 671 F.2d 977, 978 (6th Cir.1982). The IRS may serve such a summons only if it can establish in a court proceeding (1) that the summons relates to the investigation of a particular person or an ascertainable group or class; (2) that there is a reasonable basis for believing that the person or group may fail or has failed to comply with a tax law; and (3) that the information sought, as well as the identity of the person or persons to which the information relates, is not readily available from other sources. 26 U.S.C.

§ 7609(f). The IRS must seek such court approval by filing an ex parte petition in federal district court. 26 U.S.C. § 7609(h)(1) and (2).

The IRS followed this procedure in seeking judicial authorization of the two John Doe summonses involved in this case. After examining the IRS's ex parte petition and supporting affidavits, Judge Henderson, satisfied that the IRS's factual assertions met section 7609(f)'s three requirements, authorized the summonses. The IRS thereafter served the summonses. When the appellants refused to comply, Judge Schnacke, having reviewed the IRS's prima facie case for enforcement, issued a show cause order. The appellants' motion for a de novo evidentiary hearing, filed in response to the order, constitutes an attempt to discover facts that they hope will undermine the statements the IRS made in the affidavits it submitted to support its ex parte petition. Judge Schnacke's denial of this motion thus raises the question whether a party, in resisting enforcement of a John Doe summons, may obtain a hearing to challenge the section 7609(f) factual determinations underlying the judicial authorization of the summons.

In analyzing this issue, it is necessary to distinguish the requirements the IRS must meet before it may *serve* a summons from those it must satisfy to obtain *enforcement* of the summons against a non-complying party. The rules regarding the service of summonses are divided into three categories. The IRS is free to serve, without prior judicial approval, a direct summons on any person if the summons is necessary to facilitate the investigation of that person's tax liability. *See* 26 U.S.C. § 7602. If a summons is to be served on a third-party record keeper, however, the IRS must provide notice to all third parties whose tax records will be affected by the summons before it may serve the summons. *See* 26 U.S.C. § 7609(a). An exception to this rule applies in cases in which the IRS is unable to determine the identities of these third parties. Under such circumstances, a John Doe summons may be issued to the record keep-

er only after the IRS, in an ex parte hearing, has satisfied the three criteria listed in section 7609(f). *See* 26 U.S.C. § 7609(h)(1) and (2).

Section 7609(f)'s criteria thus constitute a procedural safeguard which Congress created to provide extra protection to unknown target taxpayers to whom the IRS cannot give notice. *See United States v. Pittsburgh Trade Exchange, Inc.,* 644 F.2d 302, 305 (3d Cir.1981). More specifically, sections 7609(f) and (h) were enacted to provide a prior restraint on the IRS's power to serve John Doe summonses, mainly "to preclude the IRS from using such summonses to engage in possible 'fishing expeditions.' " *In re Tax Liabilities of John Does,* 688 F.2d 144, 149 (2d Cir.1982). Balancing this purpose, however, was Congress's concern that the restraint not unreasonably delay or otherwise pose an undue burden on the IRS's legitimate use of John Doe summonses. *See id.* at 148. Congress therefore required the IRS to apply ex parte for authorization to issue such summonses, so that "the question whether a John Doe summons could be served should not become embroiled in an adversary proceeding." *Id.*

Before sections 7609(f) and (h) were enacted, no statutory limitations circumscribed the IRS's power to issue John Doe summonses. *See In re Tax Liabilities of John Does,* 688 F.2d at 148; *Pittsburgh Trade Exchange,* 644 F.2d at 305. However, a party to whom a John Doe summons was issued could, like those on whom other types of IRS summonses were served, resist enforcement of the summons by challenging the Government's prima facie showing, under the four *Powell* criteria, that it was pursuing enforcement in good faith. *See United States v. Bisceglia,* 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975). The appellants argue that Congress, by providing that the IRS must meet the three requirements of section 7609(f) before a John Doe summons can be issued, also created three additional bases on which enforcement of such a summons may be challenged.

The legislative history underlying section 7609(f), however, reveals no support for this interpretation. If the appellants' view were adopted, enforcement cases involving John Doe summonses would be subject to stricter judicial scrutiny than would those involving the other types of IRS summonses. There is no indication that Congress, in enacting section 7609(f) as a safeguard against IRS abuse of John Doe summonses, intended the section to convey "a broader substantive protection of unknown than of known taxpayers." *Pittsburgh Trade Exchange,* 644 F.2d at 306. Section 7609(f) neither enlarges nor contracts the substantive rights against enforcement granted to all taxpayers under *Powell. See In re Tax Liabilities of John Does,* 688 F.2d at 149; *Pittsburgh Trade Exchange,* 644 F.2d at 306.

■ Notwithstanding the added protection sections 7609(f) and (h) provide against improper *issuance* of John Doe summonses, then, the sections do not expand beyond the *Powell* criteria the substantive grounds on which a record-keeping taxpayer can resist *enforcement* of a summons once it has been served. *See id.* As part of a challenge based on the *Powell* criteria, a third-party record keeper on whom a John Doe summons has been served may challenge the IRS's representation that the targets of its investigation are indeed unknown. *See id.* at 306–307. But the three factual determinations that a district court must make under section 7609(f) before issuing its ex parte authorization of a John Doe summons may not be challenged. There is, therefore, no reason why these factual determinations should be subject to de novo review at an enforcement hearing. We thus hold that the district court correctly denied the appellants' motion.

### B

■ A non-complying taxpayer, in responding to a show cause order, must refute the Government's *Powell* showing of good faith to oppose successfully the enforcement of an IRS summons. *See Stuckey,* 646 F.2d at 1374. If the taxpayer is able to

make a sufficient showing of bad faith on the Government's part, the taxpayer is entitled to a limited evidentiary hearing.[1] On the basis of evidence revealed at the limited evidentiary hearing, the court must determine whether the taxpayer should be permitted further discovery to uncover facts to support the assertion of bad faith. *Id.; Church of Scientology,* 520 F.2d at 825. Whether the court will order the summons enforced against the taxpayer thus depends on the result of this hearing. If the court determines that no further discovery is warranted, it will order enforcement; otherwise, it may not decide the enforcement issue until after further discovery has been conducted. *See Kis,* 658 F.2d at 540.

Satisfied with the Government's prima facie case for enforcement of all four summonses, the district court issued a show cause order to the appellants. The order scheduled the enforcement hearing for August 20, 1982. On August 11, the appellants filed their first motion for a limited evidentiary hearing. They submitted several affidavits in support of the motion on various dates before the hearing.

Each affidavit alleges facts that purportedly indicate that the IRS is acting in bad faith in seeking to enforce the summonses. Some of the affidavits, meant to demonstrate that the IRS is trying to disrupt the appellants' business through its use of the summonses, allege that compliance with the summonses would be unduly burdensome and that the IRS has refused to conduct a less disruptive field audit of the appellants' records. The remaining affidavits, submitted to show that the IRS is attempting to damage the appellants' commercial reputation, contain statements accusing the IRS of having gratuitously disclosed to customers and others—supposedly in violation of a protective order—that Samuels, the president of both appellants, has repeatedly invoked the fifth amendment in the course of another investigation.

The enforcement hearing took place as scheduled on August 20. However, neither the motion for a limited evidentiary hearing nor the affidavits submitted in support of the appellants' allegations was considered. Instead, the hearing focused on whether the two John Doe summonses were overbroad and whether a new protective order was necessary to prevent the IRS from revealing to the appellants' customers and others information relating to and derived from its investigation. Oral argument proved inconclusive on the latter point, so the court invited the appellants to file supplementary materials. The appellants afterward renewed their unconsidered motion for a limited evidentiary hearing. In connection with the protective order they were seeking, the appellants submitted four additional affidavits describing various conversations in which IRS agents told customers and others that the appellants are involved in arranging "shams" and "paper transactions" and that the IRS is seeking to enforce its summonses "to close First Western down."

On September 15, the court responded to the motion for a limited evidentiary hearing. Having considered "the voluminous pleadings and memoranda filed by the parties," the court found that all four summonses "were served for a proper purpose and not to harm the commercial reputation of respondents." This evaluation apparently turned on the conclusion that the affidavits did not "raise any material factual dispute" and, therefore, that "an evidentiary hearing would serve no purpose but delay." The court thus denied the appellants' motion and ordered the summonses enforced.

■ To make a showing of bad faith sufficient to trigger a limited evidentiary hearing, a taxpayer must "do more than *allege* an improper purpose"; "some *evidence*" must be introduced to support the allegations made. *Church of Scientology,* 520 F.2d at 824 (quoting *United States v. Salter,* 432 F.2d 697, 700 (1st Cir.1970)) (emphasis in original). In other words, a tax-

---

1. The scope of the limited evidentiary hearing is left to the district court's discretion, although it will usually entail cross-examination of the summoning agent. *Church of Scientology,* 520 F.2d at 825.

payer must answer the Government's prima facie case "through responsive pleadings, supported by affidavits, that allege *specific facts* in rebuttal." *Kis,* 658 F.2d at 539 (emphasis in original). The facts, however, need only raise "sufficient doubt" about the Government's purposes in seeking enforcement of a summons. *Church of Scientology,* 520 F.2d at 825. The taxpayer must thus allege facts "from which a court might *infer* a *possibility* of some wrongful conduct by the Government." *Kis,* 658 F.2d at 540 (emphasis in original). This implication alone is enough to trigger a limited evidentiary hearing. At this stage, the taxpayer need not actually be able to prove the Government's lack of good faith. *See id.*

■ The affidavits submitted by the appellants before the August 20 enforcement hearing, together with those they submitted after the hearing but before the court had ruled on their motion, clearly allege facts from which it may be inferred that the Government is not acting in good faith in seeking judicial enforcement of the four summonses that have been served on the appellants. We therefore hold that the district court abused its discretion by denying the appellants' motion for "a *limited* evidentiary hearing." *Church of Scientology,* 520 F.2d at 825 (emphasis in original). Accordingly, we reverse the district court's enforcement order and remand the case with instructions to conduct such a hearing to determine whether adequate cause exists to permit discovery into the Service's purposes in pursuing its investigation.

AFFIRMED in part, REVERSED and REMANDED in part. Each party shall bear its own costs.

IRVING, District Judge, concurring in part and dissenting in part:

Although I concur with portion II(A) of the majority opinion, I respectfully dissent from part II(B) and would hold Judge Schnacke did not commit an abuse of discretion or error in denying Appellants' request for a limited evidentiary hearing.

The Ninth Circuit in *United States v. Stuckey,* 646 F.2d 1369, (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982), set forth the standard of appellate review of district court decisions in cases such as these. The *Stuckey* Court held that the trial court's decision that the summonses were issued in good faith would not be disturbed unless that finding was clearly erroneous or the district court had applied an incorrect legal standard in reaching its decision. *Id.* at 1373.

In our case, Appellants submitted four affidavits in support of their request for an evidentiary hearing in which they attempted to demonstrate sufficient evidence of bad faith on the part of the government in seeking enforcement of the summonses to entitle them to the limited evidentiary hearing (provided for upon such a showing). The taxpayer carries a heavy burden in this respect. *Id.* at 1372.

The four affidavits merely recount conversations during which IRS agents told customers that appellants were involved in "shams" and "paper transaction," and that the IRS was going after First Western in an attempt to "close them down." (Middlebrook Declaration, C.R. 53 at 2).

Having considered the evidence proffered, Judge Schnacke wrote, in his order dated September 15, 1982:

Respondents have moved for an evidentiary hearing to determine whether further discovery should be allowed. No hearing is required for the issuance of these summonses. The order of Judge Henderson as to the John Doe summonses is final, and the prerequisites of their issuance cannot be questioned. Perhaps if the circumstances demonstrated some egregious conduct or overreaching by the United States, it could be taken into account in considering the requirements of the enforcement order. However, no such improper conduct by the government has been shown. Petitioner has more than ample reason to believe that there has been a failure to comply with the revenue laws, and the circumstances indicate that it is imperative that investigation of the matter be delayed no further.

Nothing has been submitted by way of declaration to raise any material factual

dispute, and an evidentiary hearing would serve no purpose but delay. Therefore, respondents' motion for an evidentiary hearing is denied.

(C.R. 61 at 4)

Considering Judge Schnacke's express determination that the evidentiary hearing would serve no purpose but delay, and the very slight showing Appellants made in their declarations, I do not believe Judge Schnacke committed reversible error in his decision to deny Appellants an evidentiary hearing.

*Stuckey* advises that the "district court has discretionary authority to limit the scope of an evidentiary hearing and to deny discovery in a summons enforcement proceeding." *Id.* at 1373. Such discretionary authority must extend to the initial determination of whether Appellants have made any showing of bad faith to even entitle them to such a hearing. Judge Schnacke examined the evidence and made a determination that Appellants had not met that burden.

Accordingly, I would affirm Judge Schnacke's denial of the Motion for a limited evidentiary hearing, and affirm enforcement of the summons.