**Philip George STUART, Sr.,**
**Petitioner/Appellant,**

v.

**UNITED STATES of America,**
**Respondent/Appellee.**

**Mons KAPOOR, Petitioner/Appellant,**

v.

**UNITED STATES of America,**
**Respondent/Appellee.**

Nos. 85–4421, 86–3791.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1986.

Decided March 24, 1987.

Brian L. McEachron, Seattle, Wash., for the petitioner/appellant.

John A. Dudeck, Washington, D.C., for the respondent/appellee.

Before BROWNING, WRIGHT, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Stuart and Kapoor, citizens and residents of Canada, appeal the district court's denial of their petitions to quash summonses of records held by their bank in Bellingham, Washington. The Internal Revenue Service issued the summonses at the request of the Canadian Department of National Revenue, pursuant to Articles XIX and XXI of the 1942 Income Tax Convention with Canada.

## FACTS

Philip Stuart and Mons Kapoor (taxpayers) are citizens and residents of Canada. Both have accounts with the Northwestern Commercial Bank in Bellingham, Washington. In an attempt to determine their income tax liability for tax years 1980, 1981, and 1982, the Canadian Department of National Revenue (Revenue Canada or the department) seeks to examine all records in the bank's possession pertaining to accounts in taxpayers' names. Pursuant to Articles XIX and XXI of the Convention between the United States of America and Canada respecting Double Taxation, Mar. 4, 1942, United States-Canada, 56 Stat. 1399, T.S. No. 983 (as amended) (the treaty), Revenue Canada requested by letters dated January 3, 1984, that the Internal Revenue Service (IRS or the service) obtain these records through the issuance of summonses to the bank. Under the treaty, the competent authority for the country receiving the requests determines whether to honor them. Thomas J. Clancy, Director of Foreign Operations District, is the United States' competent authority. He stated in affidavits that the IRS had decided to honor these requests and to issue the summonses because: (1) the requested information may be relevant in determining the tax liability of Kapoor and Stuart; (2) the same type of information can be obtained by Canadian tax authorities under Canadian law; and (3) the information requested was not already in the possession of the IRS. His affidavits also declared that Revenue Canada had requested the information to determine the correct tax liabilities of Stuart and Kapoor pursuant to a "criminal

investigation, preliminary stage" and that he had determined Revenue Canada's requests were within the scope of the treaty. The service issued the summonses on April 2, 1984.

The IRS must give notice to any person whose records it seeks from a third party. I.R.C. § 7609(a)(1) (1982). When the taxpayers received notice of the summonses they directed the bank not to comply and petitioned the district court to quash the summonses pursuant to I.R.C. § 7609(b)(2). They claimed that the summonses were (1) not issued for lawful purposes, (2) did not seek information relevant to any inquiry concerning an internal revenue tax of the United States, and (3) that the information sought could be obtained directly by Revenue Canada under Canadian law. The taxpayers served interrogatories on the IRS requesting information regarding the purpose of Revenue Canada's investigation. The IRS refused to respond, claiming that discovery is not warranted where the taxpayers fail to demonstrate that triable issues exist.

A magistrate held a consolidated hearing on the petitions and recommended that the district court enforce the summonses. Over the taxpayers' objections to the magistrate's recommendations, the district court ordered the bank to comply with the summonses. This court granted a stay of enforcement pending appeal on July 14, 1986.

## ANALYSIS

### I. The Applicable Treaty

The taxpayers argue that the treaty of 1942 does not apply to these summonses. They point out that the Convention with Respect to Taxes on Income and on Capital, Sept. 26, 1980, United States-Canada, *reprinted in* 1 Tax Treaties (CCH) ¶ 1301 (1984) (1980 treaty), became effective on August 16, 1984, after the tax years in question and after the issuance of the summonses, but before the district court entered enforcement orders in either case. Article XXX of the 1980 treaty determines when its provisions enter into force:

2. The Convention shall enter into force upon the exchange of instruments of ratification and, subject to the provisions of paragraph 3, its provisions shall have effect:

(a) For tax withheld at the source on income referred to in Articles X (Dividends), XI (Interest), XII (Royalties) and XVIII (Pensions and Annuities), with respect to amounts paid or credited on or after the first day of the second month next following the date on which the Convention enters into force;

(b) For other taxes, with respect to taxable years beginning on or after the first day of January next following the date on which the Convention enters into force; and

(c) Notwithstanding the provisions of subparagraph (b), for the taxes covered by paragraph 4 of Article XXIX (Miscellaneous Rules) with respect to all taxable years referred to in that paragraph.

3. . . . .

4. Subject to the provisions of paragraph 5, the 1942 Convention shall cease to have effect for taxes for which this Convention has effect in accordance with the provisions of paragraph 2.

The government offers two arguments for application of the 1942 treaty. First, it contends that because the summonses address tax liability for 1980–82, subsection 2(b) controls when Article XXVII, the exchange of information provision, enters into force. This subsection states that, "for other taxes," the convention goes into effect on the first of January immediately following the exchange of the instruments of ratification. They were exchanged on August 16, 1984. Because Article XXVII is not explicitly mentioned in subsections 2(a) or 2(c), the government asserts that it falls into the category of "other taxes." Accordingly, the 1980 treaty only applies to summonses investigating tax liability for years commencing on or after January 1, 1985.

Alternatively, if the effective date of Article XXVII is determined by section 2 and not subsection 2(b) (i.e., if the 1980 treaty applies to any request for information made after August 16, 1984, regardless of the tax year to which the information pertains), the government notes that these requests were made on January 3, 1984, the summonses were issued on April 2, 1984, and the petitions to quash filed on April 20, 1984; all of these events preceded the exchange of instruments. The taxpayers argue that the determinative dates should be those on which the enforcement orders were issued, March 25, 1985, and December 11, 1985, respectively.

■■■■ We review this question of treaty interpretation, one of first impression, de novo. We find the government's second argument persuasive and therefore need not address its first. The information exchange provisions of both treaties set out when the United States or Canada may honor the other's requests for information. The date of the request or, at the latest, the date of the decision to honor it should determine which treaty applies. Because these dates are prior to August 16, 1984, we look to the 1942 treaty in reviewing the district court's order granting enforcement of these summonses.

## II. Political Question

The 1942 treaty has two articles dealing with information exchange, Article XIX and Article XXI, whose relevant parts follow:

### Article XIX

With a view to the prevention of fiscal evasion, each of the contracting States undertakes to furnish to the other contracting State, as provided in the succeeding Articles of this Convention, the information which its competent authorities have at their disposal or are in a position to **obtain under its revenue laws** in so far as such information may be of use to the authorities of the other contracting State in the assessment of the taxes to which this Convention relates.

Article XXI

1. If the Minister [of the Department of National Revenue] in the determination of the income tax liability of any person under any of the revenue laws of Canada deems it necessary to secure the cooperation of the Commissioner [of the IRS], the Commissioner may, upon request, furnish the Minister such information bearing upon the matter as the Commissioner **is entitled to obtain under the revenue laws of the United States of America.**

1942 Treaty, art. XIX, para. 1 and art. XXI, para. 1 (emphasis added).

█ The government argues that the determination of the competent authority to honor a request conclusively establishes that Revenue Canada's request was made for a legitimate purpose under the treaty. Courts should not review this determination as it impinges on the executive branch's conduct of foreign affairs. In essence, the government argues that the IRS's decision on whether to honor a request is a political question and therefore not justiciable. The application of the political question doctrine is a legal issue, which we review de novo.

█ In *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court examined three factors to determine whether a question was political and therefore not justiciable: (1) does the text of the Constitution commit the issue "to a coordinate political department;" (2) does the judiciary lack "discoverable and manageable standards for resolving it;" and (3) would judicial intervention express a "lack of the respect due coordinate branches of government." *Id.* at 217, 82 S.Ct. at 710. Here, the terms of the treaty permit the IRS to furnish Canada only with information that the service is entitled to obtain under the revenue laws of the United States. In other words, the United States may obtain information for Canada to the same extent that it could do so for its own use and subject to the same limitations. *See United States v. A.L. Burbank & Co.*, 525 F.2d 9, 13 (2d Cir.1975), *cert. denied*, 426 U.S. 934, 96 S.Ct. 2647, 49

L.Ed.2d 386 (1976). The question of what information can be obtained under the revenue laws of the United States is not one committed by the text of our Constitution to another branch, does not require courts to move beyond areas of judicial expertise, and does not appear to implicate substantial prudential considerations against judicial intervention.

The doctrine of judicial review commits the task of interpreting statutes primarily to the courts. Courts have acquired from domestic cases substantial expertise in interpreting these revenue laws and, as more specifically pertains here, in reviewing requests for enforcement. Although one court has suggested that the international character of treaty requests counsels against judicial intervention, *United States v. Manufacturers & Traders Trust Co.*, 703 F.2d 47, 52–53 (2d Cir.1983), our examination of the first two factors of the *Baker v. Carr* analysis convinces us that we should not apply the political question doctrine here. Moreover, this circuit has previously rejected the argument that the doctrine applies without exception to treaties simply because affairs of state are involved:

It is the role of the judiciary to interpret international treaties and to enforce domestic rights arising from them. See, e.g., *Kolovrat v. Oregon*, 366 U.S. 187 [81 S.Ct. 922, 6 L.Ed.2d 218] (1961); *Perkins v. Elg*, 307 U.S. 325 [59 S.Ct. 884, 83 L.Ed. 1320] (1939); *Charlton v. Kelly*, 229 U.S. 447 [33 S.Ct. 945, 57 L.Ed. 1274] (1913); *United States v. Rauscher*, 119 U.S. 407 [7 S.Ct. 234, 30 L.Ed. 425] (1886). In those few cases involving interpretation of treaties when the political question doctrine precludes review, that doctrine has narrow confines. The principal area of nonjusticiability concerns the right of the executive to abrogate a treaty. That is not the issue here.

*United States v. Decker*, 600 F.2d 733, 737 (9th Cir.) (some citations omitted), *cert. denied*, 444 U.S. 855, 100 S.Ct. 113, 62 L.Ed.2d 73 (1979).

Summonses in domestic cases are not self-enforcing. I.R.C. §§ 7402(b), 7604(a);

*see United States v. Harris,* 628 F.2d 875, 879 (5th Cir.1980). Our analysis of the political question doctrine does not convince us that we should treat summonses issued at the request of a treaty partner differently. "It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *United States v. Powell,* 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964).

### III. Good Faith

 Courts will enforce a domestic summons only if it was issued in good faith. The four major elements of good faith were first set out in *Powell,* 379 U.S. at 57–58, 85 S.Ct. at 254–55:

> [The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed....

The government argues that the good faith limitations placed on domestic summonses do not apply to summonses issued at the request of a treaty partner. We review this contention de novo. *Ponsford v. United States,* 771 F.2d 1305, 1307–08 (9th Cir. 1985); *see also United States v. McConney,* 728 F.2d 1195, 1202–04 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Even if these limitations apply in full force to treaty summonses, the government contends that the district court correctly concluded that the summonses were issued in good faith. We review the district court's finding of good faith under the clearly erroneous standard. *Ponsford,* 771 F.2d at 1307–08.

### A. Application of Good Faith to Treaty Summonses

 According to the taxpayers, the summonses were not issued in good faith because their purpose was improper: to aid Revenue Canada in its "criminal investigation, preliminary stage." The legitimate purpose element of good faith has changed since *Powell.* It originated in the Supreme

Court's concern that the IRS might use its power to issue administrative summonses in order to harass taxpayers, to pressure them into settling collateral disputes, or, as Stuart and Kapoor assert is occurring in this instance, to obtain evidence for use in a criminal prosecution. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255; *Reisman v. Caplin,* 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964). But as criminal and civil liability for violation of the tax laws are inherently intertwined, there has been some difficulty in deciding how far a criminal investigation can progress before the IRS must relinquish its power to issue summonses. *See Donaldson v. United States,* 400 U.S. 517, 531–36, 91 S.Ct. 534, 542–45, 27 L.Ed.2d 580 (1971); *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 306–21, 98 S.Ct. 2357, 2362–70, 57 L.Ed.2d 221 (1978). A majority of five justices held in *LaSalle* that the IRS may issue summonses as long as it has not made a recommendation of criminal prosecution to the Department of Justice and has "not abandon[ed] in an institutional sense ... the pursuit of civil tax determination or collection." *Id.* at 318, 98 S.Ct. at 2368. Justice Stewart, in a dissent joined by three other justices, predicted that determining "institutional good faith" would be unworkable and argued for a "bright-line test:" summonses in criminal investigations must be issued prior to a recommendation for criminal prosecution. *Id.* at 320–21, 98 S.Ct. at 2369–70.

Congress adopted the minority's view when it passed the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982. Pub.L. No. 97–248, 96 Stat. 324 (1982); *see* Joint Comm. on Taxation, *General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982,* 97th Cong., 2d Sess. 234–36 (Comm. Print 1982); *see also* S.Rep. No. 494, 97th Cong., 2d Sess. 285–87 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin.News 781, 1030–32. TEFRA allows the IRS to use its summonsing authority in investigations "into any offense connected with the administration or enforcement of the internal revenue laws" until the service refers the

matter to the Justice Department. I.R.C. § 7602(b)-(c); see *Pickel v. United States,* 746 F.2d 176, 183–84 (3rd Cir.1984).

The government argues that the good faith doctrine's requirement of a legitimate purpose should not apply to summonses issued at the request of a treaty partner. It urges this circuit to adopt the holding of *Manufacturers & Traders Trust Co.,* 703 F.2d at 49–53, a case involving the same treaty. The Second Circuit held that the legitimate purpose standard for summonses issued pursuant to treaty requests is less stringent than the standard developed in the decisions involving domestic cases. *Id.* It concluded that the phrase in Article XXI, "as the Commissioner is entitled to obtain under the revenue laws of the United States of America" does not necessarily mean that the "judicial gloss" of the Supreme Court's decisions in *LaSalle* and *Powell* should apply to treaty summonses. After discussing the policy considerations upon which *LaSalle* rests, the Second Circuit held that "there is no purpose to applying" the limitations that prohibit the use of summonses to obtain information that will also be used for "criminal-investigatory-prosecutory purposes" or to obtain information that Revenue Canada will share with other officials concerned with criminal prosecution. *Id.* at 50–52. The court believed that the policies that led the Supreme Court to impose these limitations—concerns about infringing on the role of grand juries and about expanding discovery powers in criminal prosecutions—simply had no relevance to Canada, which does not employ grand juries and does not share "our position on pre-trial discovery in … criminal cases" or to Canadian citizens, who "ha[ve] no right to expect that [they] will have the protection accorded by this country to its own taxpayers and potential defendants." *Id.* at 52.

We decline the government's request to adopt *Manufacturers & Traders Trust Co.* That case involved a summons issued prior to Congress's imposition, via the TEFRA amendments, of the dissenters' position in *LaSalle.* Faced with the majority decision in *LaSalle,* the Second Circuit was understandably reluctant to delve into the insti-

tutional good faith of Revenue Canada, an agency of a foreign country. 703 F.2d at 52–53. After TEFRA, no such inquiry is necessary. Now the requirement is only that there has been no referral for criminal prosecution.

We hold that the good faith doctrine applies to summonses issued under the treaty. Accordingly, the next question we must address is whether the Canadian investigation has progressed to a stage analogous to a Justice Department referral: (1) has Revenue Canada recommended that the Canadian Department of Justice criminally prosecute Kapoor and Stuart or (2) has Revenue Canada requested the summonses at the behest of the Canadian Department of Justice? See I.R.C. § 7602(c)(2)(A)(i)–(ii).

**B. Prima Facie Showing of Good Faith**

The affidavits of the IRS contain identical statements concerning the purposes of Revenue Canada's investigation:

> By letter dated January 3, 1984, the Government of Canada, through Mr. Philip Pinkus, Director, Provincial and International Relations Division, Revenue Canada, made a request for information to be used to determine the correct tax liability of [the taxpayers], under the laws of Canada. The Canadian taxing authorities' investigation of [the taxpayers] is a criminal investigation, preliminary stage.

In its briefs and at oral argument, the government asserted that the burden is on the taxpayers to show that the criminal investigation in Canada has reached a stage analogous to a referral to the Department of Justice. They must do so without the benefit of discovery unless they can allege specific facts that raise a sufficient doubt concerning the department's purpose. *United States v. Samuels, Kramer & Co.,* 712 F.2d 1342, 1347–48 (9th Cir.1983); *United States v. Church of Scientology,* 520 F.2d 818, 823–24 (9th Cir.1975).

The government can establish its prima facie case for enforcement of a do-

mestic summons with an affidavit from the agent who issued the summons stating that the requirements of the good faith doctrine have been met: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiry is relevant to the purpose; (3) the information sought is not already within the service's possession; and (4) the required administrative steps have been followed. *Id.* at 821; see also *Powell,* 379 U.S. at 57–58, 85 S.Ct. at 254–55; *Samuels, Kramer & Co.,* 712 F.2d at 1344–45. The government conceded at oral argument that its affidavits in domestic cases usually state that there has been no referral for prosecution, and affidavits quoted in reported decisions bear this out. *See, e.g., Moutevelis v. United States,* 727 F.2d 313, 314 (3d Cir.1984). We hold that in order to establish its prima facie case by affidavit, the IRS must make an affirmative statement that the investigation has not reached a stage analogous to a Justice Department referral. The service is in the best position to determine this: it can consult with Canada's competent authority and can be expected to have greater familiarity with Canadian administrative procedures. We do not believe that requiring the IRS to make such a statement will unduly restrict the service's summonsing authority or impede enforcement of summonses. Moreover, this requirement avoids the anomaly of "placing a burden of proof upon the taxpayer and then denying access to what may be the very information needed to meet that burden." *United States v. Stuckey,* 646 F.2d 1369, 1373–74 (9th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1436, 71 L.Ed.2d 653 (1982).

Although we are convinced that disputes such as presented here are justiciable, we are also mindful of the importance of promptly disposing of challenges to summonses. See *United States v. Kis,* 658 F.2d 526, 535–36 (7th Cir.1981), *cert. denied,* 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Delay may defeat the purpose for which the summons is sought. By requiring the affidavit to contain information establishing that the summonses could be obtained under domestic law, the delay encountered in appeals such as this

one would be avoided. Ambiguous statements about the purpose of an investigation invite challenges and lead to delay, as this case illustrates.

We conclude that it was clear error to find that the affidavits made a prima facie showing of legitimate purpose. The court on remand should allow the IRS the opportunity to amend its affidavits to include the required statement, *see United States v. Lincoln First Bank,* 45 A.F.T.R.2d (P–H) 80–942, 80–944 to 80–945 (S.D.N.Y.1980).

## C. Late Submission of Material by the IRS

One additional matter concerning the good faith showing requires discussion. After the case had been argued and submitted, the government sent additional materials to us. Included in this material were purported copies of portions of Revenue Canada's Operations Manual outlining the stages of criminal tax investigations. The government claims the excerpts indicate that the Revenue Canada had not yet recommended criminal prosecution and asks us to consider the excerpts under rule 44.1. Fed.R.Civ.P. 44.1. The taxpayers objected to the government's submission.

 Approximately one-half of the material the government submitted is additional briefing on domestic law. The government did not seek leave of the court before filing it and thereby violated subsections (c) and (j) of appellate rule 28. Fed.R. App.P. 28(c) & (j). We strike this portion and shall not consider it. We deal with the remaining material under rule 44.1, which states:

### Determination of Foreign Law

A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Fed.R.Civ.P. 44.1. We note with concern that the government has made similar late submissions of foreign law materials in at least two other reported cases of this type. *See Harris v. United States,* 768 F.2d 1240, 1242 (11th Cir.1985), *vacated,* —— U.S. ——, 107 S.Ct. 450, 93 L.Ed.2d 398 (1986) (remanded for reconsideration in light of *O'Connor v. United States,* —— U.S. ——, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986)); *Coplin v. United States,* 761 F.2d 688, 691 (Fed.Cir.1985), *aff'd sub nom. O'Connor v. United States,* —— U.S. ——, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986). We realize that we may consider foreign law materials at any time, whether or not submitted by a party, and that late submissions often have been considered in cases interpreting treaties. Fed.R.Civ.P. 44.1; *see Coplin,* 761 F.2d at 691–92. We decline to consider these. The purpose of rule 44.1's notice requirement is to avoid unfairly surprising opposing parties. Fed.R.Civ.P. 44.1 advisory committee's notes. Our task is certainly easier if a party who intends to raise an issue of foreign law does so as early as possible. Submission of such materials in the district court may well have the salutary effect of avoiding the delay encountered in appeals. Absent special circumstances, parties should present issues of foreign law in their appellate briefs at the latest. The excerpts submitted to us arrived without exact citations as to their source or their present validity. In fairness to the taxpayers and in order to encourage early submission of such material in the future, we decided the good faith issue on the briefs and oral argument. The government may submit the additional material upon remand, if necessary. At that time the taxpayers will have adequate opportunity to respond.

## IV. Discovery

█ The taxpayers claim that the district court abused its discretion in denying their requests for discovery. If the IRS can establish a prima facie showing of legitimate purpose by amending its affidavits, submitting the excerpts from Revenue Canada's operating manual, or both, Stuart and Kapoor have the burden of overcoming that showing. They must make a substantial challenge alleging specific facts that raise "sufficient doubt" about the validity of the summonses. If they are unable to carry this burden, they are not entitled to discovery. *Samuels, Kramer & Co.,* 712 F.2d at 1347–48; *Church of Scientology,* 520 F.2d at 823–25.

## V. Scope of Summons

█ The taxpayers challenge the summonses as overly broad. We review the district court's finding of relevancy for clear error and find none. The IRS has the authority to summon any records that may be "relevant" or "material" to a tax investigation. I.R.C. § 7602(a)(1). The service need show only that the materials "would throw light upon the correctness of the taxpayer's returns." *United States v. Ryan,* 455 F.2d 728, 733 (9th Cir.1972). Relevancy, like legitimate purpose, is an element of good faith and therefore may be established by affidavit. *Liberty Fin. Servs. v. United States,* 778 F.2d 1390, 1392 (9th Cir.1985). The taxpayers failed to allege specific facts and to produce some evidence establishing any doubt about the relevancy of the documents to which the summonses apply.

## CONCLUSION

The orders of the district court enforcing the summonses are reversed and the petitions are remanded for proceedings consistent with this opinion.

REVERSED and REMANDED.

WRIGHT, Circuit Judge, dissenting:

I dissent because the majority opinion imposes new burdens on the competent authority, meddles unnecessarily in Canadian internal affairs, and rejects the only circuit case that considered the good faith requirement in a request for summmons under this treaty. Since I find that the competent authority has met its burden, I would enforce the summonses. "My belief is that a remand will only delay the conclusion of the case." Chambers, J., dissenting in *Neuschafer v. McKay,* 807 F.2d 839, 842 (9th Cir.1987) (Chambers, J., dissenting).

In order to enforce a tax summons, the IRS need only make a showing of good faith. *United States v. Powell*, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964); *see also Liberty Financial Services v. United States*, 778 F.2d 1390, 1392 (9th Cir.1985) (burden of establishing good faith is "minimal"). The courts look only to the competent authority's affidavit to determine whether "good faith" has been shown. *See United States v. Bache Halsey Stuart, Inc.*, 563 F.Supp. 898, 900-01 (S.D.N.Y.1982); *Liberty*, 778 F.2d at 1392. No inquiry is made into the affidavit itself. *See id.*

Here, the competent authority's affidavit stated that (1) the Canadian request was within the scope of the treaty; (2) it was appropriate to honor the request; (3) the requested information may be relevant to the determination of current tax liabilities of Stuart and Kapoor under Canadian law; and (4) the same type of information could be obtained by Canadian authorities under Canadian law.

That affidavit shows good faith. It addresses the elements of *Powell*. In *Bache*, the competent authority submitted an affidavit almost identical to that here, and the court held that a prima facie showing was made. *Bache*, 563 F.Supp. at 900 n. 2.

If the competent authority makes a showing, the taxpayers bear a heavy burden in refuting it. *United States v. LaSalle National Bank*, 437 U.S. 298, 317, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978). "Because criminal and civil fraud liabilities [in tax investigations] are coterminous, the Service *rarely* will be found to have acted in bad faith by pursuing the former." *Id.* (emphasis added).

Here, Stuart and Kapoor did not show an improper purpose. They made bare assertions that Canada's criminal investigation, preliminary stage, is analogous to a Justice Department referral, and that the competent authority lacked a proper purpose for his enforcement request.

This is hardly enough to carry a light burden, much less a heavy one. These Canadian taxpayers have failed to refute the competent authority's showing. *United States v. Samuels, Kramer & Co.*, 712 F.2d 1342, 1347 (9th Cir.1983) (mere allegations are not enough to refute showing of good faith). The district court's finding was not clearly erroneous.[1]

The majority opinion holds that this affidavit fails to make a prima facie showing of good faith because its exact language differs from that used in *Powell* to describe the elements of good faith. *Powell*, 379 U.S. at 57-58, 85 S.Ct. at 254-55. *Powell* does not require strict language. Rather, it requires merely a showing containing the elements of good faith. A court need not search the showing for specific words, but decides only whether a showing has been made.

The majority does not stop at requiring specific language in the affidavit. It goes on to create an additional requirement for the good faith showing. This would require that the competent authority must, in addition to the *Powell* language, "make an affirmative statement that the investigation has not reached a stage analogous to a Justice Department referral." Op. at 249-50. The majority justifies this by implying that the statement is required by the revenue laws of the United States, and thus by the treaty. Op. at 246, 249. It also says that (1) the IRS is better able to make this determination; (2) this will not impede enforcement of the summons; and (3) this will reduce litigation and delay in enforcement. *Id.* at 250.

Only one circuit has considered the good faith requirement in a request for summons under this treaty. The Second Cir-

---

1. The clearly erroneous standard requires the appellate court to accept a lower court's findings of fact unless the appellate court is left with the "definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Dollar Rent A Car of Washington, Inc. v. Travelers Indemnity Co.*, 774 F.2d 1371, 1374 (9th Cir.1985). Even accepting the majority's interpretation of the good faith test, the difference between the language in the competent authority's affidavit and the language the majority demands is so minor that the district court's ruling can not be deemed clearly erroneous.

cuit held in *United States v. Manufacturers & Traders Trust Co.*, 703 F.2d 47 (2d Cir.1983), that "the requirements for summons-enforcement are not in all respects precisely the same as for domestic cases." *Manufacturers*, 703 F.2d at 50.

The majority opinion rejects the holding of *Manufacturers* because it preceded the Tax Equity and Fiscal Responsibility Act of 1982, which modified the good faith test requirement.

This is not a sound basis to reject the holding of *Manufacturers*. That case is not undercut by the fact that the Act (TEFRA) eliminated the requirement that one requesting information from the IRS not abandon the civil investigation intent. The majority opinion observes that the Second Circuit was "reluctant to delve into the institutional good faith of Canada." Op. at 248. That court's approach was consistent with current law.

*Manufacturers* says that "the judicial gloss need not be the same for an international case of this type as for a wholly domestic one." *Manufacturers*, 703 F.2d at 51. It holds that, because this country's policies of (1) pursuing criminal prosecutions through the Justice Department, rather than the IRS, and (2) limiting criminal prosecution discovery, do not apply in Canada, we should relax the good faith test for Canadian tax information requests. *Id.* at 52.

The Second Circuit opinion shows a healthy respect for the United States' responsibilities under an international treaty. The court recognized "considerations special to dealings between separate nations" and noted that

> Canada might wonder what concern the United States has in applying its internal policy to a case in which this country's taxes and citizens are not at all involved—only Canada's. More than that, our international relations with Canada might be damaged and the executives in both countries might be embarrassed if an organ in this country were to characterize a Canadian request as made in "bad faith" where that request was per-

fectly appropriate under the law of the requesting country.

*Manufacturers*, 703 F.2d at 53.

I also disagree with the majority's other justification. This new requirement will necessarily impede the enforcement of a summons because it requires the competent authority to make additional findings. It will *increase* rather than decrease enforcement litigation because the courts will have to determine ultimately exactly what kinds of Canadian investigations are "analogous" to a Justice Department referral.

The good faith issue should have been decided without a remand. In the course of oral argument, it appeared there was some confusion over the government's burden to make an adequate showing to justify a warrant. To assist the court, government counsel tendered supplemental materials but without complying with procedural rules, as noted by the majority. But there is precedent for doing just what counsel has done here in cases involving the interpretation of treaties. *Coplin v. United States*, 761 F.2d 688, 691 (Fed.Cir.1985), *aff'd sub nom. O'Connor v. United States*, — U.S. —, 107 S.Ct. 347, 93 L.Ed.2d 206 (1986).

The taxpayers objected to our considering the materials, not because they were irrelevant or inaccurate statements of Canadian procedures but only because the rule had not been followed. The simple and expedient way to handle this would have been to invite the taxpayers to respond, giving a reasonable time. Had we done so, this case would long since have been decided.